82 N.J. Super. 133 (1964)
196 A.2d 808
ITALO J. FALCONE, PLAINTIFF,
v.
MIDDLESEX COUNTY MEDICAL SOCIETY, AN UNINCORPORATED ASSOCIATION, MIDDLESEX COUNTY MEDICAL SOCIETY, A CORPORATION OF THE STATE OF NEW JERSEY, MIDDLESEX GENERAL HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, AND ST. PETER'S GENERAL HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 7, 1964.
*134 Messrs. Friedman & D'Alessandro for plaintiff.
Messrs. Toolan, Haney & Romond for defendant Middlesex County Medical Society.
MOLINEUX, J.C.C. (temporarily assigned).
This is a motion for summary judgment made on behalf of defendant Middlesex County Medical Society in an action instituted by plaintiff against it and against Middlesex General Hospital and St. Peter's General Hospital. An understanding of the issue herein raised calls for a resume of prior litigation between plaintiff and said medical society.
On October 22, 1958 plaintiff filed an action in lieu of prerogative writs against the Society alone, in which the complaint alleged generally that he had been duly licensed to practice medicine and surgery in the State of New Jersey by the State Board of Medical Examiners of New Jersey; that he had been denied membership in said Society notwithstanding that its constitution provided that its membership should be open to doctors of medicine who are registered to practice medicine in New Jersey subject to provisions of its bylaws; that such hospitals as St. Peter's General Hospital and Middlesex General Hospital would appoint no physicians as *135 members of their staffs, or permit any physician to treat any patient in the hospitals, or gain admission of a patient to the hospitals, unless the physician was a member of defendant Society; that as a result of his having been barred from such membership, plaintiff was barred from any connection with either of said hospitals; and that as a consequence thereof he had been denied the right to earn a livelihood and obtain the economic advantages to which he was justly entitled by reason of his license to practice medicine. The complaint in said action asked for relief by way of an order directing defendant Society to admit plaintiff as an active member, to adjudicate his rights with respect to the grievances alleged in his complaint, and for such other judgment as may be just and legal. After answer filed, pretrial, final hearing, and pursuant to an opinion of the late Judge Vogel reported in 62 N.J. Super. 184 (Law Div. 1960), Judge Vogel signed a judgment directing defendant Society to forthwith admit plaintiff to full membership in said Society, enjoining and restraining the Society from taking any action questioning his right to membership, and directing the Society to pay him the costs of the action to be taxed. On appeal the decision of Judge Vogel was affirmed by the Supreme Court, 34 N.J. 582. The decision of the Supreme Court was handed down on May 8, 1961.
On February 7, 1962 plaintiff filed his complaint herein, naming as defendants the Society, Middlesex General Hospital and St. Peter's General Hospital. Count 1 of the complaint alleges the malicious denial to plaintiff of the membership by the Society and malicious denial by the hospitals of his use thereof, alleges damage to him by reason thereof, and asks for a money judgment. Count 2 repeats in general the allegations of count 1 and adds a malicious conspiracy between the Society and the hospitals to injure plaintiff and destroy his professional practice. Count 3 alleges a conspiracy existing prior to September 1961 (apparently the date of the mandate of the Supreme Court in the prior case), and that the Society and the hospitals continued the conspiracy, *136 in that plaintiff is denied the use of the operating rooms of said hospitals and is refused admittance to their respective surgical staffs. Count 4 appears to be directed against the two hospitals alone, omitting the allegation of the conspiracy and alleging that each of said hospitals still continues to deny plaintiff admittance to the operating rooms of said hospitals and refuses to admit him to the surgical staffs. It appears that the fourth count is not directed against the Society.
Motion for summary judgment is made herein on the ground that the judgment in the prior litigation between plaintiff and the Society bars the instant action in that it was incumbent upon plaintiffs to process his claim for money damages in his first action, in order to avoid multiplicity of suits, and that his failure to do so bars a subsequent suit.
Obviously, this argument does not apply to the third count, which alleges a conspiracy by this defendant and the hospitals in failing to carry out the mandate of the court in the first action.
As noted above, the fourth count is not directed against the Society, so that this motion is not directed to said count.
That the policy of our courts is to avoid multiplicity of suits is beyond question. In Ajamian v. Schlanger, 14 N.J. 483 (1954), Mr. Justice Brennan said:
"The policy of the new practice contemplates that the Superior Court litigant not only should initially plead any legal and equitable claims or defenses, whether or not consistent, supporting his position in the controversy and seek all legal or equitable remedies which he may desire, but also, with the aid of the broad discovery and pretrial procedures by which he may obtain all the facts material to the positions of both sides, that he should avail himself of the liberality allowed to form and reform his pleadings and the pretrial order accordingly, the opportunities for such amendment being restricted, in any substantial degree, only by R.R. 4:29-1(15) and 4:15-2 applicable to amendments offered after the entry of the pretrial order, or during trial." (at p. 485)
In Applestein v. United Board & Carton Corp., 35 N.J. 343 (1961), the Supreme Court again said:
*137 "The sound administration of a judicial system requires that all facets of a single dispute between parties be completely determined in one action. Thus, to end wasteful division of authority between the court of law and the court of chancery in our former judicial system our 1947 Constitution provided that `the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined.' Constitution of 1947, Art. VI, sec. III, par. 4. To implement this policy of judicial administration, we have held that a defendant must assert all matters which will defeat a claim against him and a plaintiff must seek complete relief for vindication of the wrong he charges. See Massari v. Einsiedler, 6 N.J. 303 (1951); Ajamian v. Schlanger, 14 N.J. 483 (1954); Thatcher v. Jerry O'Mahony, Inc., 39 N.J. Super. 330 (App. Div. 1956); Vacca v. Stika, 21 N.J. 471 (1956)." (at p. 356)
The Appellate Division has said in Silverstein v. Abco Vending Service, 37 N.J. Super. 439 (1955):
"* * * Since Ajamian v. Schlanger, 14 N.J. 483 (1954), there remains no basis to misapprehend that the courts of this state are determined to enforce the prime aim of the new practice for `* * * the just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants' (Id., 14 N.J., at page 485); Massari v. Einsiedler, 6 N.J. 303, 307-309 (1951); cf. New Jersey Highway Authority v. Renner, 18 N.J. 485, 492 (1955). (Emphasis supplied) `The piecemeal litigation of fragments of a single controversy is too evident an evil to remain unchecked,' within present day philosophies as to the efficient functioning of litigation. Schnitzer, Civil Practice and Procedure, 10 Rutgers L. Rev. 351, 371 (1955); Id. 9 Rutgers L. Rev. 307, 334 (1954). * * *" (at p. 449)
Also see the concurring opinion of Justice Proctor in Wangler v. Harvey, 41 N.J. 277 (Supreme Court, decided December 16, 1963), referring to "* * * our firm commitment to the enlightened policy that just and expeditious disposition at one time and place of all matters in controversy between the parties is to be encouraged." It is obvious, therefore, from the holdings in the afore-mentioned cases that the policy of our courts is to dispose of the ultimate merits of an entire controversy between litigants in a single action.
*138 It should be noted here that in the first suit the complaint alleges in paragraph 17 that defendant's conduct deprived plaintiff of his right to earn a living and to obtain the economic advantages of his admission to practice medicine in the State of New Jersey. In other words, plaintiff in that suit alleges the fact of damages. Indeed, in his prayer for relief, while not specifically asking for a money judgment, he requests "such other judgment as may be just and legal." Judge Vogel, in his opinion in the original case, notes (62 N.J. Super., at p. 200) the substantial injuries suffered by plaintiff. Thus, it is apparent that as of the time the original suit was instituted, his claim for damages existed.
Plaintiff contends that the instant suit is in effect a different cause of action calling for different relief, and that therefore the principle enunciated in the afore-mentioned cases is not applicable. A comparison of the two complaints indicates that the only additional allegation contained in the second complaint is plaintiff's charge of maliciousness against defendant Society and conspiracy by defendant Society and the two hospitals, and from this it is said that in fact the second suit is on a separate and distinct cause of action and that the failure to include said cause of action in the first suit does not bar a subsequent attempt to enforce it.
Plaintiff cites in support of this position Aldrich Water Co. v. Sprinkle, 70 N.J. Super. 134 (Law Div. 1961). That was an action in lieu of prerogative writs instituted by the Aldrich Water Co. against a municipality, demanding a direction by the court requiring the defendant to consent to the laying of plaintiff's pipes and mains. It appeared that plaintiff had made application for such right. No action was taken by the township committee on the Aldrich application, but the committee then adopted a resolution authorizing the setting up of the Jackson Water Co. for the purpose of operating a water company in the area covered by the Aldrich application. The new company was incorporated. Thereafter, by consent, an amended complaint was filed, joining the said Jackson Water Co. as a party defendant, in which amended complaint Aldrich *139 asked an injunctive relief against Jackson. This pleading contained a count seeking damages against Jackson for interference with a contractual relationship of Aldrich with the township. The trial judge, in referring to this pleading, stated, "Suffice it to say the second amended complaint sounds in tort and is not properly the subject of a suit in lieu of prerogative writ." This, it is said by plaintiff, is a holding that the relief contemplated by an action in lieu of prerogative writs and relief by way of damages are separate causes of action and therefore the subject matter of separate suits. Plaintiff fails to note, however, that trial judge went on to say, "Accordingly, an order to sever the second amended complaint for purposes of trial will be entered." It would appear, therefore, that the judge did not clearly hold that there were two separate causes of action not properly joined in a single suit, but rather that the two aspects of the controversy would, for the purposes of trial, be severed.
Whatever may be the holding in the Aldrich case, this court is of the opinion that the philosophy of Ajamian v. Schlanger, Applestein v. United Board & Carton Corp., and Wangler v. Harvey, supra, is not to be circumscribed by a technical approach to the question of whether or not relief by an action in lieu of prerogative writs and relief by the recovery of damages constitute "separate" causes of action. In the case now before the court, both actions concern a relationship existing between plaintiff and defendant, all of the facts of which were known to plaintiff or available to him as of the time the first suit was instituted. The controversy was in fact a single controversy to which there was made available to plaintiff a remedy by way of mandamus to prevent its continuation, and a remedy by way of damages to compensate him for the damages he allegedly suffered. The allegation of maliciousness and the allegation of a conspiracy contained in the second complaint add nothing to the essential nature of the controversy between the parties. It is conceived, therefore, that pursuant to the afore-mentioned holdings of our Supreme Court, a single action should have been instituted by plaintiff *140 to obtain both forms of relief, unless there be some overriding practical reason why both forms of relief could not have been obtained in an action in lieu of prerogative writs.
Several reported New Jersey decisions indicate that an action in lieu of prerogative writs may include a request for such other appropriate relief as is necessary to avoid multiplicity of litigation. Thornton v. Village of Ridgewood, 17 N.J. 499 (1955); Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953). In Garrou the court said:
"Nowhere in the rules is there any basis for the suggestion that there is to be excluded from within their orbit the joinder of an equitable claim for injunction with a claim in lieu of prerogative writ. It seems clear to us that the joinder of such claims, in appropriate circumstances such as those presented in the instant matter, is well within the farsighted provisions of the rules and will serve the ends of sound judicial administration by curbing the inconvenience, delay and expense incident to independent trials." (at p. 305)
In Dolan v. DeCapua, 16 N.J. 599 (1954), plaintiffs sought injunctive relief and also requested damages in an action in lieu of prerogative writ. That case involved the validity of a zoning variance granted with respect to use of a six-car garage. The action was brought against private landowners and officials of the City of Orange. Although plaintiffs were not awarded damages because they "failed to carry their burden of proof of damages," it is clear that the joinder was permitted, and the implication is that they could have received an award in damages had they sustained their burden of proof.
Such court determinations permitting additional relief in an action in lieu of prerogative writs seem fully in accord with the policy enunciated in N.J. Const., Art. VI, § III, par. 4, and in R.R. 4:31-1. That rule states in pertinent part:
"The plaintiff in his complaint or in an answer to a counterclaim denominated as such and the defendant in an answer setting forth a counterclaim may join either as independent or as alternate claims as many claims, either legal or equitable or both, as he may have against an opposing party." *141 Also see 2 Schnitzer and Wildstein, N.J. Rules Service, A IV-930, which states:
"The joinder of a claim in lieu of prerogative writ relief with an equitable claim for injunction, or recission, or pecuniary damages, or declaratory judgment is authorized by R.R. 4:31-1 * * *."
As indicated previously, the damages sought herein in counts 1 and 2 are based upon the same facts which gave rise to the judgment for plaintiff in the original action in lieu of prerogative writs against this defendant. To permit him now to seek damages suffered during the period to and including the date the original judgment was entered by the Superior Court, Law Division (July 21, 1960), would violate the above discussed policy of this State against multiplicity of litigation. R.R. 4:55-5. Accordingly, the motion for summary judgment herein is granted as to counts 1 and 2 for all damages suffered to and including said date, but is denied as to damages suffered subsequent thereto. Said motion is denied as to count 3.